## MIZEL et al. v. BROWN.

No. 34108. May 15, 1951.

*231 P. 2d 661.*

Reily, Reily & Spurr, Shawnee, for plaintiffs in error.

Arrington & Miller, Shawnee, for defendant in error.

HALLEY, J. This is an action brought by Abe Mizel, Sam Mizel, and Morris Mizel, a copartnership doing business as Central Supply Company; Herman Kaiser, doing business as Her-

man Kaiser Pipe & Supply Company; and R. C. Lillard, against Robert (Bob) Brown, to recover damages because of an alleged breach of an oral contract for the sale and delivery to plaintiffs of 15,000 feet of three-inch line pipe.

Defendant denied that he entered into any contract with plaintiffs whereby he unconditionally agreed to sell and deliver to them that amount of three-inch pipe. He, in substance, pleads that he only contracted and agreed to sell and deliver to the plaintiffs such amount of three-inch line pipe, up to 15,000 feet, as might be salvaged from certain specific oil and gas leases which he had theretofore purchased from third parties.

At the conclusion of the evidence, plaintiffs moved the court for a directed verdict. The motion was denied and the cause submitted to the jury. A verdict in favor of the defendant was returned, and judgment was entered on the verdict.

Plaintiffs have appealed, and rely for reversal on the ground that the verdict of the jury is not supported by the evidence and that the trial court erred in denying their motion for a directed verdict.

The evidence offered by plaintiffs, standing alone and uncontradicted, is sufficient to establish that they had contracted with defendant for the unconditional sale and delivery of 15,000 feet of three-inch pipe; that defendant on demand refused to deliver the pipe; and that they thereby suffered damage as claimed in their petition.

Plaintiffs, as part of their case, offered in evidence several letters written by defendant. On April 19, 1947, he wrote a letter to Morris Mizel, one of the plaintiffs, in which he acknowledged receipt of a check in the amount of $6,000 to apply on the purchase price of 15,000 feet of three-inch pipe at 28c per foot and two strings of eight-inch pipe (approximately 300 feet) at $1.35 per foot. On May 9, 1947, he wrote Mr. Mizel as follows:

"I talked to Rufus Lillard a few minutes ago. I told him that by Wednesday, most all of the 3″ should be brought in and racked. The twelve or fifteen joints of casing that we brought over from one of the wells when tubing was hauled over is separately marked on a rack for you to get, if and when."

On May 14, 1947, he addressed another letter to Mr. Mizel which, as far as here material, said:

" . . . Originally, you gave me a deposit check for $6,000.00, and with the 8″ you ordered some 3″ line pipe at 28c per foot, which will be delivered to you when the weather permits. I can tell you now, however, that it will be at least a week, and probably ten days. Just before the last rain I tried to go into the creek bottom to get the line pipe out for you and I literally buried the caterpillar.

"If it does not suit your convenience to wait for the possible delivery of this 3″ line pipe, I am only too happy to refund to you now the difference between $4,812.52 and $6,000.00."

Defendant, in support of his defense, testified in substance that sometime in March of 1947 he purchased oil and gas leases on approximately 1,100 acres of land. These leases contained thousands of feet of various sizes of pipe, part of which was above the ground and part below. The only information defendant had as to the amount of pipe on the leases was an inventory which reflected that the leases purchased contained, among other things, approximately 30,000 feet of three-inch line pipe. On April 14, 1947, defendant sold 10,000 feet of this three-inch pipe to a Mr. Zeligson. On April 18, Mr. Mizel, Mr. Kaiser, and Mr. Lillard, persons representing all three of the plaintiffs, called upon him for the purpose of purchasing the entire Davis lease, which was one of the leases bought by defendant. No deal as to this lease

was consummated. The parties walked over the various leases and discussed the price of various pipe located thereon. Part of the conversation took place beside a rack of three-inch line pipe. One of the parties representing plaintiffs asked defendant, Brown, if this particular pipe was for sale. He answered that it was not; that he had already sold 10,000 feet to another party, but that the inventory showed that he was supposed to have 30,000 feet of three-inch pipe; that he desired to retain some of the pipe for his own use, and that according to the inventory he should have approximately 15,000 feet left.

However, defendant testified that at no time did he enter into an agreement with plaintiffs to unconditionally sell and deliver to them 15,000 feet of three-inch pipe. He stated that he discussed with plaintiffs the approximate amount of three-inch line pipe that he might be able to salvage from these leases, and that he did agree to sell and deliver to plaintiffs approximately 3,500 feet of eight-inch pipe at $1.35 per foot, and an amount of three-inch line pipe up to 15,000 feet. At the time the deal was made he told plaintiffs that according to the inventory obtained by him when he purchased the leases he was supposed to have 30,000 feet of three-inch line pipe; that he had theretofore sold 10,000 feet of this pipe; that he intended to retain several pieces for his own use, and that according to the inventory he should have enough left to deliver to plaintiffs approximately 15,000 feet of three-inch line pipe.

Defendant further testified that on the 5th day of May, 1947, he saw Mr. Kaiser and informed him that the inventory was wrong and that the number of feet of pipe as shown thereby could not be produced from the leases, and he would not be able to deliver the full 15,000 feet. On the 9th day of May he talked with Mr. Lillard and likewise informed him, and Mr. Lillard replied that the inventories on such cases are frequently wrong. That neith-

er Mr. Kaiser nor Mr. Lillard then insisted that he was required under the contract to deliver 15,000 feet of three-inch line pipe, but that shortly thereafter he received a letter from Mr. Lillard demanding that he deliver to plaintiffs 15,000 feet of three-inch line pipe according to his contract, and stating that upon his failure to do so suit would be brought against him for damages because of his failure to deliver. He further testified that he then had delivered 4,300 feet of three-inch line pipe to plaintiffs, and that he had on hand 2,500 additional feet, which he offered to deliver, but that plaintiffs refused to accept delivery on the ground that the pipe offered was merely "culls"

The evidence shows that the plaintiffs in this case were jointly interested in purchasing the pipe.

This, in substance, constitutes the evidence offered in the case. We think it was sufficient to take the case to the jury on the issues raised by defendant, and that it was sufficient to authorize the jury to find in favor of the defendant. The evidence clearly shows that the parties, at the time they entered into the contract, took into consideration the amount of pipe that might probably be recovered from the leases as shown by the inventory.

The parties knew and understood that defendant's only source of supply was the pipe located on these leases; that the amount thereof was uncertain, and that if the inventory proved to be incorrect defendant would not be able to deliver the full 15,000 feet of three-inch pipe. We think the evidence shows, or at least is sufficient to authorize the jury to find, that it was contemplated by all of the parties at the time the contract was entered into that defendant would only be required to deliver such an amount of three-inch pipe as might be procured from the leases up to 15,000 feet. The evidence shows that defendant procured and gathered all of the three-inch line pipe then lo-

cated on the leases and that he tendered to plaintiffs all of such pipe remaining unsold at the time the contract was entered into. He delivered to plaintiffs all of the three-inch line pipe required of him under his contract and therefore cannot be held liable in damages because of failure to deliver the full 15,000 feet. The conclusion thus reached finds support in Snipes Mountain Co. v. Benz Bros. & Co., 162 Wash. 334, 298 P. 714; Midland Steel & Equipment Co. v. Douglas Auto Parts Co., Inc., 315 Ill. App. 207, 42 N. E. 2d 550.

Plaintiffs refer to the letters written by defendant and contend that these letters constitute a complete written contract, and that the court and jury were bound by these letters and by the written contract, and that their motion for directed verdict should therefore have been sustained. We do not agree. Defendant in his letters does not purport to state the full terms of the contract. Neither of these letters states in detail the terms and conditions thereof. They do not conclusively establish that the contract was other than and different from the contract claimed by defendant to have been entered into between the parties.

The evidence was sufficient to take the cause to the jury on the theory of defendant's defense.

The jury had these letters before it for consideration in connection with the other evidence in the case in arriving at its verdict. It rendered a verdict in favor of the defendant. We cannot say that there is no competent evidence tending to support the verdict.

The trial court ruled correctly in denying plaintiffs' motion for a directed verdict.

The judgment is affirmed.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur.